Steve. Sorry. We'll proceed. We will not stand for a precess. Counsel, you may proceed. Okay. Good afternoon, Justices. Sorry. Justices, we believe that there's a clearly apparent opposite conclusion from a view of the record in this case. Treatment was awarded for an exploratory surgery that had already been performed twice with the goal of looking for surgery recommended by Dr. King at the beginning of the case, and that surgery had in fact been performed by Dr. Weimer. And Dr. Weimer was in the shoulder, looked, did not see a labral tear. It's clearly evident, in fact, that Dr. Weimer, who has actually performed two shoulder surgeries, was in that shoulder twice and noted an intact labrum both times. This is Dr. who? Weimer. I might be mispronouncing the name. Weimer. Weimer. I'm sorry. And why would we want to award a third surgery to look for the same thing that we've already looked for twice and not seen, and in fact tell the petitioner at that point, this may or may not help you, but we should go in there again? Well, let me ask you this. There were also, in addition to the doctors, there were two, as I understand it, radiologists who reviewed imaging studies of the claimant's shoulder, correct? Yes. And they observed tears of the labrum? Yes. So the commission can't consider that? The radiologists are not surgeons. They're not experts. And they're... What do you mean they're not experts? They're experts on what appears on film. They're experts on what appears on film. The doctor was in the shoulder and was looking at the shoulder. Yes. What did King and Moll have to say? King and Moll did not review the surgical films. They, King had examined the petitioner as an IME, recommended the surgery, the surgery was authorized, and they went through it and didn't see a labral tear at that time. Later on, after King had been seen as a treater by the petitioner, he again recommended a surgery to look for a labral tear, because he thought there was a labral tear. Dr. King always thought there was a labral tear. There wasn't a labral tear there. Dr. Rotman, who did review the films, noted that he agreed with Dr. Weimer that he saw an intact labrum. He also said there And what about... Who's Dr. Moll? Dr. Moll was the third choice of doctor that the petitioner chose. And he opined that Clayman's current condition and well-being is casually related to his network accident, right? Yes, he did. So you have conflicting... You're all in on the fact that the operating doctor didn't find anything, and even though you might say the weight of the other medical testimony is that there was these tears, although you're arguing the doctor did the surgery, of course, wasn't a superior physician. But does that necessarily carry the day? The case should have ended right there. The commission shouldn't have considered these other medical opinions that contradicted. I believe it should have carried the day in conjunction with Dr. Rotman's opinions, who also reviewed the films and didn't note the lateral tears. Didn't the commission find specifically that Weimer released Clayman from treatment, his opinion to be of little weight, as the respondent was refusing to authorize further treatment? Didn't they specifically comment on that? Yes, they did. What's Rotman's specialty? Upper extremities. Is he in a better position to interpret film than a radiologist? I believe he is. He is? You really think so? Yes, sir. The expert for interpreting film is the radiologist. Even we know that. It's not the surgeon. The surgeon listens to the radiologist to determine what's there. I mean, this is a case of manifest weight. There's plenty of evidence in the record to support the decision, and there's evidence in your favor. There's no right answer in manifest weight, but the commission chose to believe Kane and Ball and the two radiologists over Weimer and Rotman. So why should we reverse it? I want you to agree with me. Well, no, I understand you agree with you, but the fact of the matter is, what basis do we have to do it? Judge, I believe from my review of the record that the opposite decision is apparent. Our other point is awarding of bills for Dr. Maul when he was clearly the third choice of doctor by petitioner. You may have a stronger argument on that. Just summarize why, okay? Now, King was initially functioning as the M.I.U., right? Yes, sir. That seems to be the rub. But then, did the claimant seek treatment from King on his own after that? Yes, he did. So then you're arguing that would be the first choice, correct? The first choice was Dr. Weimer, and then he went to see Dr. King as an I.M.E. I thought Maul was the second, and then King ended up being the third. No, King saw Weimer, he was sent to Dr. King. He did go to see Dr. Maul, and then he went to see Dr. King. Dr. King, however, saw him, I don't have the time frame clear in my head, it's in the brief, he saw him between Weimer and Dr. Maul. Once he decided to use Dr. King as a treater, he said he's adopted all of Dr. Maul's appointments, his opinions, and examinations as part of that record. So Dr. King is the second treater. And then Dr. Maul comes into play as a referral from a friend. It's implied, I believe, in But he went to Dr. Maul third, so that's his third choice of doctor that's out of the chain of referrals. And he exceeded the two. Okay. With that, I'll rest. Thank you, Counsel. Counsel, you may respond. Good afternoon, Your Honors, Counsel. I think we all know that the standard here is math is the way of the evidence. It's pretty clear we have two board certified orthopedic surgeons saying there's a problem with the labrum tear. Two radiologists objective testing all shows the O'Brien testing positive results from that. We'd ask that you rule in favor of the commission affirming their decision on the issue of manifest way of the evidence. So we have one surgeon operating, right? We have one surgeon operating, that's And he sees no tear, right? He does, yes. He goes in and doesn't see a tear. But as we all know, reasonable minds can disagree. Dr. Maul, who had, counsel misspoke here, Dr. Maul had reviewed the surgical films as did Dr. King. Both had seen and recommended repair of the labrum. The radiologists have seen the films and say there's a problem with the labrum. The objective testing shows there's a problem with the labrum. Dr. Weimer, also this is the same Dr. Weimer, and not to disparage Dr. Weimer because he's a fine doctor, but he also missed the biceps tear and had to go back in and repair that and did the second surgery. So reasonable minds can disagree. Dr. Maul does actually in the testimony an explanation of how this is a Kim lesion and how some is a significance in another problem. So, you know, as with any type of medical treatment, we get second opinions, third opinions. In this case, we have a manifest way to the evidence standard. We have the commission relying upon two board certified orthopedic surgeons who agree that there's a problem there and agree that there's, with the radiologists that there is, have recommended a procedure that will hopefully help my client, Mr. Barber. What was the order that you saw these doctors? Was it Weimer, King, Maul, or was it Weimer, Maul, King? So it was Weimer for two, it was Weimer was the treater. He's the number one. Number one. So that was his first choice. Yeah. You know, he was sent to Dr. King on two, Dr. King on two occasions at the bequest of the employer. That doesn't count with COVID. Exactly. Those are Section 12 examinations. Then, after he's released from Dr. Weimer, he goes and sees Dr. Maul. Our position is that is his second choice. He sees Dr. Maul. And then, after he sees Dr. Maul, A couple weeks later, he goes to see King. A couple weeks later, he goes to see King. That's right. So it was Weimer, Maul, and King. Right. So I totally disagree with counsel's argument here. We've raised no case law or anything. Say you can leapfrog the chain of doctors. I mean, I can just see disastrous consequences resulting from this, where you're seeing several doctors down the road, and you just happen to go with a doctor at the end, and then suddenly you've invalidated all the treatment that they previously authorized. I mean, there's a reason why we don't see any case law on that, and I would suggest that that is exactly why. Thank you. Counsel may reply. I'm not sure if I properly introduced myself. James Egan. Never. Thank you. But in any event, unless you have questions for me, I will retire. Not retire. Not retire. Just for the day. I would love to retire for the day and drive home. I want to understand your argument about how King gets to be the second doctor. Are you saying that it relates back to the Army? Yes, that's exactly what we're saying. Thank you, counsel, both for your arguments that matter. Conceder advisory for disposition shall issue, and the court will stand in recess until 9 a.m. tomorrow morning. 9 a.m.